CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

MAY 0 8 2012

JULIA C. DUDLEY, CLERK
BY: /s/ Pam Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| DANNY A. JORDAN, SR., *Plaintiff,* | No. 6:11–cv–00047 |
| v. | MEMORANDUM OPINION |
| GOBO, INC. and PHIL LYNCH, *Defendants.* | JUDGE NORMAN K. MOON |

Plaintiff, *pro se*, filed suit against Defendants under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), alleging unlawful retaliation under § 215(a)(3). Pending before the Court are Defendants' Motion to Dismiss under Rule 12(b)(6) (docket no. 6), Defendants' Motion for Sanctions (docket no. 14), and Plaintiff's two Motions for Summary Judgment (docket nos. 18 and 19[1]). The Court held a hearing on March 27, 2012,[2] after which I notified the parties of my intention to convert Defendant's Motion to Dismiss into a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure. I gave the parties fourteen (14) days to submit additional evidence, and then, upon Plaintiff's request, I granted an additional seven (7) days for further submissions. For the reasons that follow, I will grant Defendants' Motion for Summary Judgment, deny Defendants' Motion for Sanctions, and deny Plaintiff's Motions for Summary Judgment.

---

[1] Plaintiff's "Second Motion for Summary Judgment" (docket no. 19) is more accurately described as a Response in Opposition to Defendants' Motion for Sanctions.

[2] Plaintiff advised the Court that due to an injury, he would be unable to attend the hearing. He did not seek to postpone the hearing to a later date, and he consented to the hearing taking place in his absence.

## I. BACKGROUND

Defendant GoBo, Inc. ("GoBo") owns and operates a Bojangles' Famous Chicken 'n Biscuits ("Bojangles'") restaurant franchise, located on Timberlake Road in Lynchburg.[3] Defs.' Mem. 2. Defendant Philip Lynch is the President of GoBo, and works at the restaurant in a managerial capacity. Plaintiff Danny Jordan was among the first group of managers hired to manage the restaurant, which opened on January 29, 2009. *Id.* Plaintiff completed his training and began work, but due to an unspecified health condition, he left work on medical leave beginning July 22, 2009. Defs.' Mem. 3. In late July or early August, Plaintiff telephoned Lynch to discuss various concerns Plaintiff had about his compensation. Defs.' Mem. 2–3. Lynch dealt with Plaintiff's concerns by paying Plaintiff for two additional days of leave. *Id.* at 3.

By a letter dated October 5, 2009, *see* Lynch Aff. Nov. 14, 2009 Ex. 4, Plaintiff alerted Lynch that Plaintiff believed that the pay for his time away from work while sick in June and July (mentioned above) had come out of his vacation time, and that such a practice was unlawful. *Id.* Plaintiff told Lynch that he was on the verge of filing a federal complaint under the FLSA. *Id.* While Plaintiff's letter indicates that it is the "second of its kind," Lynch claims that it was actually Plaintiff's first written signal that he was concerned about his pay. Defs.' Mem. 3. Upon receiving Plaintiff's letter, Lynch claims to have immediately called Plaintiff and left a voicemail message, which Plaintiff did not return. *Id.*

As threatened, on October 20, 2009, Plaintiff filed a complaint in this Court against GoBo, alleging that the use of his vacation time to compensate him for sick leave violated the

---

[3] Defendants have provided the Court with useful background factual information in their Memorandum in Support of their Motion to Dismiss, and in a Declaration and an Affidavit by Defendant Phil Lynch. The Court's consideration of these and other documents outside the pleadings requires the Court to treat Defendant's instant Motion to Dismiss as a Motion for Summary Judgment.

FLSA. *Id.* For a variety of reasons, I granted summary judgment in GoBo's favor on April 30, 2010. *See Jordan v. GoBo, Inc.*, No. 6:09–cv–00059, 2010 WL 1816361 (Apr. 30, 2010), *aff'd*, 393 Fed. App'x 118 (4th Cir. 2010), *cert. denied*, 131 S. Ct. 1021 (2011).

Around the same time that he filed his initial complaint, Plaintiff informed his co-manager, Olivia Parrish,[4] that he had been released by his doctor to return to work. Compl. at 3. Parrish informed Lynch of that development, but for one reason or another, Plaintiff never returned to work. Instead, around the end of October or the beginning of November, Plaintiff filed for unemployment with the Virginia Employment Commission ("VEC"). Defs.' Mem. 4. The VEC found Plaintiff to be eligible for unemployment. *See* Compl. Ex. 3. Importantly though, Defendants did not participate in the initial hearing, and the VEC decisions do not address a November 13, 2009 letter sent to Plaintiff, discussed below. Defendants appealed the VEC's decision, but lost their appeal in an opinion dated May 27, 2010, in which the VEC observed that Plaintiff had denied under oath that he quit his job, and that that Plaintiff "maintained contact with the employer weekly . . . up until mid-February, 2010, but was never placed back on the employer's schedule." Compl. Ex. 4.

On November 13, 2009, in response to Plaintiff's allegations regarding his payment dispute—and seemingly without knowledge that Plaintiff had filed for unemployment—Lynch sent Plaintiff a letter asking Plaintiff to contact him to schedule Plaintiff's return to work. Compl. Ex. 1. In this letter, Lynch informed Plaintiff that (1) Plaintiff was being paid back wages representing the sum he alleged he was owed in his first FLSA complaint and (2) that Plaintiff should "give [Lynch] a call to arrange a time to meet, bring a copy of [Plaintiff's] medical release[,] and [Plaintiff and Lynch will] plan the resumption of [Plaintiff's] work

---

[4] Ms. Parrish is no longer employed by GoBo, Inc. Lynch Decl. Feb. 2, 2012.

schedule." *Id.* Moreover, Lynch raised Plaintiff's salary to $455 a week, and enclosed a check for $848.05, an amount said to make up for the 35 weeks during which Plaintiff received only a $430 weekly salary.[5] *Id.*

The parties dispute whether or not Plaintiff made attempts to contact Lynch after receiving the letter. *See* Compl. 3; Defs.' Mem. 4. Plaintiff claims to have visited the restaurant at least twice a week, and Lynch claims to have been at the restaurant at least six days a week training new managers, but somehow, Lynch and Jordan did not cross paths during the relevant period. In support of his claims, Plaintiff submitted what he styles as "Affidavits"—but which are more accurately described as unsworn declarations under 28 U.S.C. § 1746—by which Plaintiff's co-managers, Keisha Pollard, Chris Pollard, and Julie Brewer,[6] attest to the fact that Plaintiff did stop into the restaurant on numerous occasions in an attempt to meet with Lynch. Pl.'s Add'l Evid. (docket no. 25). Lynch claims, to the contrary, that Plaintiff made no such efforts—at least not while Lynch was in the restaurant. Defs.' Mem. 4. Lynch claims that the only reason he did not immediately bring Plaintiff back to work was because he had not seen Plaintiff's medical release until being served with the instant lawsuit. *Id.*

In sum, Defendants argue that Plaintiff was not retaliated against in violation of the FLSA. *Id.* Indeed, Defendants claim that Plaintiff was not terminated whatsoever, and that, instead, Plaintiff voluntarily quit his employment. *Id.* In support of their argument, and cutting against the idea that Plaintiff made an effort to return to work, Defendants cite the fact that Plaintiff filed for unemployment compensation just one week after GoBo was served with the original FLSA lawsuit. Defs.' Mem. 5. Plaintiff, however, insists that the character of his

---

[5] In the letter, Lynch indicated that he agreed with Plaintiff's contention that $455 was the minimum weekly salary for exempt employees under the FLSA.

[6] Julie Brewer was actually terminated in October, 2009, and no longer works at the restaurant. Defs.' Add'l Evid. 1 (docket no. 26).

- 4 -

relationship with Defendants turned sour only after Defendants were served with his first FLSA complaint, giving rise to his instant retaliation claim.

## II. APPLICABLE LAW

Because the Court is looking beyond Plaintiff's bare allegation that he was terminated, the summary judgment analysis is required. Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When it comes to materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The dispute about a material fact must be "'genuine,' that is . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Finally, where, as here, the Court faces cross motions for summary judgment, it must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987).

## III. DISCUSSION

### A. Retaliation

The allegedly material factual dispute in this case concerns whether Plaintiff actually suffered some form of unlawful retaliation. "[A]n FLSA retaliation plaintiff must show three elements: (i) that he engaged in an activity protected by the FLSA; (ii) that he suffered an adverse action by the employer subsequent to or contemporaneous with such protected activity; and (iii) that a causal connection exists between the employee's activity and the adverse action." *Boscarello v. Audio Video Sys., Inc.*, 784 F. Supp. 2d 577, 581 (E.D. Va. 2011) (citing *Darveau v. Detecon*, 515 F.3d 334, 340 (4th Cir. 2008)).

The undisputed facts demonstrate that Plaintiff did engage in an activity protected by the FLSA, namely, filing the 2009 complaint, which was said to arise out of Defendants' violation of the FLSA. This case hinges on element (ii), *i.e.*, whether Defendants took any adverse action in response to Plaintiff's filing of his original complaint in 2009. If element (ii) is satisfied, then element (iii), the causal connection between Plaintiff's filing of the Complaint and the adverse action, would also clearly be fulfilled.

The Fourth Circuit has interpreted the phrase "adverse employment action" to mean *only* "ultimate employment decisions, such as hiring, granting leave, discharging, promoting, and compensating." *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981); *Belton v. Sigmon*, 101 F. Supp. 2d 435, 444 (W.D. Va. 1998) (holding that removing plaintiff's marketing responsibilities and divesting her of her "Team Leader" position did not constitute an ultimate employment decision when neither Plaintiff's pay nor her job title was affected)).

That said, "[a]n action against an employee that is less severe than a formal discharge may constitute an adverse employment action." *Adams v. Sch. Bd. of Hanover Cnty.*, Civil

Action No. 3:05CV310, 2008 WL 5070454, at *15 (E.D. Va. Nov. 26, 2008) (citing *Watkins v. Disabilities Bd. of Charleston Cnty.*, 444 F. Supp. 2d 510, 517 (D.S.C. 2006)). For instance, "if an employer deliberately makes the working conditions intolerable in an effort to induce the employee to quit," *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186–87 (4th Cir. 2004), a plaintiff might be able to demonstrate *constructive* discharge. To prevail under the constructive discharge theory, a plaintiff must demonstrate (1) a defendant employer's deliberate intent to force the plaintiff to resign and (2) the "objective intolerability of the working conditions." *Watkins*, 444 Supp. 2d at 517. Importantly, "dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004). And I observe that the Fourth Circuit has "carefully cabined" the claim of constructive discharge because it is "so open to abuse by those who leave employment of their own accord." *Honor*, 383 F. 3d at 187 (quoting *Paroline v. Unisys Corp.*, 879 F.2d 100, 114 (4th Cir. 1989)).

In this instance, turning first to Defendant's Motion for Summary Judgment, no reasonable jury could find that Plaintiff was terminated—actually or constructively—and summary judgment in Defendants' favor is therefore appropriate. First, as already noted, Plaintiff has not alleged that Lynch (or anyone else with hiring or firing authority at GoBo) told Plaintiff that he was terminated, or did anything else that could reasonably be construed as ending Plaintiff's employment prior to his filing for unemployment compensation. To the contrary, *even after* Plaintiff filed for unemployment, Lynch made significant attempts to advise Plaintiff of the steps he should take to return to work. The law in this circuit did not require Lynch to drop everything and take every conceivable step to track Plaintiff down and put him

back to work; Lynch sent Plaintiff a letter, along with a check for back pay, and told Plaintiff to get in touch, which Plaintiff failed to do. Plaintiff admits to never attempting to reach Lynch on his cell phone, and despite Plaintiff's claims that he went by the restaurant at times he though Lynch would be there, the undisputed fact remains that the two did not meet. The fact that Plaintiff failed in his attempts to reach Lynch falls far short of creating a genuine dispute of material fact with respect to whether Plaintiff was actually terminated. He was not.

Nor could any reasonable jury find that Plaintiff was constructively discharged. Even accepting as true the various declarations from Plaintiff's co-workers indicating that he made certain attempts to look for Lynch in the Bojangles restaurant, the undisputed facts do not support either the conclusion that Lynch deliberately forced Plaintiff to resign, or that working conditions (or, in this case, pre-conditions to returning to work) were objectively intolerable. Plaintiff's allegation that Lynch was "bad mouth[ing]" Plaintiff, Compl. 3, is not by itself sufficient to make a *prima facie* case of retaliation. Lynch's "sett[ing] strict guidelines for the return of [P]laintiff's work," Compl. 3, similarly does not constitute objectively unreasonable conduct. Finally, Plaintiff's claim that he decided to file for unemployment compensation based on the unsubstantiated reports of his co-worker, Olivia Parrish, also does not make out a viable constructive discharge claim under the law.

In short, Plaintiff has not alleged that Lynch ever told him he was actually terminated or he should not return to work, and taking Plaintiff's allegations in the light most favorable to him, no reasonable jury could find that he was constructively discharged. I will grant summary judgment in Defendants' favor. On similar grounds, but this time taking the facts in the light most favorable to Defendants, I will deny Plaintiff's first Motion for Summary Judgment.

- 8 -

Case 6:11-cv-00047-NKM-RSB   Document 31   Filed 05/08/12   Page 8 of 9   Pageid#: 161

### B. Rule 11 Sanctions

Defendants request that the Court sanction Plaintiff because Plaintiff "pursued a course of conduct and pattern of litigation against these defendants maliciously and in bad faith." Defs.' Mot. for Sanctions 3. Although Rule 11 applies to both represented an unrepresented parties, *Harmon v. O'Keefe*, 149 F.R.D. 114, 116 (E.D. Va. 1993), Plaintiff's suit is not the proper subject of sanctions. After all, the VEC did decide—albeit with imperfect information—that Plaintiff was involuntarily terminated. I cannot deem Plaintiff's Complaint a harassing or frivolous claim of the sort that Rule 11 of the Federal Rules of Civil Procedure is intended to sanction.

### IV. CONCLUSION

I find there to be no genuine dispute of material fact as to whether Defendant terminated Plaintiff in response to Plaintiff's FLSA claim, inasmuch as no reasonable jury could find that Plaintiff was terminated, actually or constructively. It is therefore appropriate for the Court to grant summary judgment in Defendants' favor, and deny summary judgment as requested by Plaintiff. I will also deny Defendants' Motion for Rule 11 Sanctions.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion to all parties of record.

Entered this 8th day of May, 2012.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

Case 6:11-cv-00047-NKM-RSB Document 31 Filed 05/08/12 Page 9 of 9 Pageid#: 162